**Deborah BILES, Administratrix of the Estate of Dennis B. Biles, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 87–1707
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

July 8, 1988.
Rehearing Denied Aug. 3, 1988.

Tom Davis, Michael Slack, Byrd, Davis & Eisenberg, Austin, Tex., for plaintiff-appellant.

Roy Krieger, Wendy L. Rome, Washington, D.C., for defendant-appellee.

Before GEE, GARWOOD, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant, Deborah Biles, the widow of a victim of an airplane crash, most forcefully contends that the trial court erred in finding that an air traffic controller had no duty to advise the aircraft of an approaching terrain hazard. The remaining two issues, factually based, are whether the controller was negligent and if so, whether her negligence proximately caused the fatal accident. We affirm the conscientious and thorough decision of the trial court.

## BACKGROUND

The parties stipulated to the following facts. On April 20, 1982, Dennis Biles was a passenger on a Mitsubishi MU–2 aircraft, N165MA, which was to fly from Chattanooga, Tennessee to Fort Payne, Alabama. Prior to departure from Lovell Field in Chattanooga, the pilots obtained a telephone weather briefing from the Crossville FAA Flight Service Station. The briefing included a warning that VFR, visual flight rules,[1] flight was not recommended due to

---

1. A VFR flight requires weather conditions sufficient to allow the pilot to see and avoid other aircraft and to maintain visual contact with the ground.

low cloud ceilings and poor visibility. The pilots, however, elected to undertake a VFR flight despite the warning and the fact that the pilots were qualified and the aircraft was equipped for IFR, instrument flight rules, flight.

Prior to take-off, N165MA advised Lovell ground control that it would be flying VFR on a heading of 215 and the pilots would see how high they could get. Ground control instructed N165MA to maintain an altitude of 2500 feet or below. The aircraft was cleared for take off at 0912:05, eastern standard time. At 0913:52 the air traffic controller, Jeanne Garrison, acknowledged radar contact with an N165MA and told the pilots to climb to their requested altitude. At 0915:30 N165MA advised ground control that it "looks like 1500's all we're gonna get right now."

At 0922:06 just prior to the aircraft's cross-over into airspace controlled by the Atlanta Air Route Traffic Control, Garrison advised "Mitsubishi 5MA radar service terminated 23 miles south of the Chattanooga airport, frequency change is approved and do you think you'll be able to get to Ft. Payne alright?" At 0922:16, N165MA advised it would "remain on this frequency, ... so far we're still VFR. We might want to turn around. Contact you coming back the other way." Shortly after radar service was terminated, N165MA collided with a north-south ridge line on Lookout Mountain, Georgia, at a terrain elevation of approximately 2000 feet mean sea level. All of the occupants of the aircraft except passenger Bruce Bowers were killed in the crash.

Although no one saw the crash, a couple living approximately ¼ mile north-west of the crash sight reported that the area surrounding their home was enshrouded with thick fog which limited visibility to approximately 50 feet for at least three hours prior to the crash and until at least two hours after the crash.

The parties also stipulated that Georgia law should apply to both damages and liability in the instant case.

Appellant Biles alleged negligence on the part of Ms. Jeanne Garrison, the air traffic controller in this incident, arising from a duty to warn the pilots of the plane's proximity to mountainous terrain. Following a bench trial, the district court concluded that under the circumstances there was no such duty arising out of paragraph 33 of the Air Traffic Control Manual; even if there was, the controller was not negligent; and alternatively, her negligence was not a proximate cause of the crash.

We agree with the district court's initial decision that the circumstances did not give rise to a duty of the air traffic controller to issue a warning or advisory concerning the proximity of N165MA to the terrain.[2] Paragraph 33 of the Air Traffic Control Manual, FAA order 7110.65C, establishes the guidelines for issuance of such advisories as follows:

> Issue a safety advisory to an aircraft if you are aware the aircraft is at an altitude which, *in your judgment,* places it in an unsafe proximity to terrain, obstruction, or other aircraft. (emphasis added).

See *Redhead v. United States,* 686 F.2d 178, 181 (3rd Cir.1982), *cert. denied,* 459 U.S. 1203, 103 S.Ct. 1190, 75 L.Ed.2d 435 (1983).[3] This regulation applies to both VFR and IFR flights. We are not persuaded that, in light of the judgmental factor embodied in this regulation and the facts then known to Ms. Garrison, she had a duty to warn this aircraft of the approaching mountain hazard.

Biles's best case for finding the existence of a duty arises from Garrison's knowledge

---

**2.** Because the parties stipulated all relevant facts, the nature and extent of the controller's duty of care is a question of law freely reviewable on appeal. *Daley v. United States,* 792 F.2d 1081, 1085 (11th Cir.1986). To the extent subsidiary findings of fact inform the court's conclusion concerning duty, they are reviewed under the clearly erroneous standard. See *Daley,*

792 F.2d at 1085, *Miller v. United States,* 587 F.2d 991, 994 (9th Cir.1978).

**3.** In *Redhead,* the court declined to find that an air traffic controller bore a duty to solicit weather information from a pilot and order appropriate action where the pilot was descending into mountainous terrain under VFR.

that the aircraft was apparently flying a straight course toward Lookout Mountain at an altitude below its crest in weather that established marginal VFR flying conditions in Chattanooga. Biles urges that these factors created a doubt about the safety of the aircraft, and any such doubt should have been resolved in favor of issuing an advisory warning. We are constrained to disagree, largely because these isolated facts do not round out the picture of information available to the controller.

It is true that the weather in Chattanooga at the time was marginal and that the pilot of N165MA informed the controller at one point that he might not get above 1500 feet. On the other hand, the controller saw that the altitude of the aircraft varied between 1500 and 1900 feet elevation while it remained on the radar screen. Moreover, the crash site was more than 20 miles from the Chattanooga airport and the controller could not simply assume that the cloudiness in Chattanooga was uniform all the way to and including Lookout Mountain. "The people who were best informed about the weather at the critical area were the crew members of the plane." *Redhead,* 686 F.2d at 183. There was never any indication of stress or uncertainty in the voice of the pilot, tips that would have alerted her to provide advice.

Most critically, the pilot's last communication with the controller indicated that the aircraft remained on VFR status. Ms. Garrison was entitled to assume that this representation was accurate;[4] At N165MA's altitude in uncontrolled airspace, a VFR flight must have flight visibility of one mile

or greater. See 14 CFR § 91.105. Furthermore, a pilot operating in VFR conditions is authorized to fly fairly close to the ground and can often be below the elevation of nearby terrain. Ms. Garrison was entitled to assume that if the pilot was flying according to VFR standards, visibility had probably improved as he travelled farther from Chattanooga airport. As the trial court noted, supporting this assumption, about seven minutes had elapsed from Ms. Garrison's initial communications with the pilot until his last, still unruffled, transmission.

Only by assuming that minimum VFR conditions were insufficient to protect the aircraft can one justify a duty to warn by the controller. If the controller was unaware of the exact weather conditions fifteen or more miles away, or if she was unaware that minimum VFR conditions ceased to exist, she could have no obligation to warn.

Air traffic controllers cannot be presumed to have X-ray vision and extrasensory perception. They must follow the rules and regulations that have been established by experts for their use, and we see no sign on the record before us that Ms. Garrison deviated from the regulations. Our nation's skies are crowded to an unprecedented extent, and air traffic controllers are exceedingly busy. Our complex air travel system will become unsafe unless pilots themselves carefully follow prescribed flight guidelines to achieve the maximum safety in their own operations. In this case, several deviations from accept-

---

4. "The controller had a right to assume that in the absence of evidence to the contrary, conditions were such that the aircraft could operate under visual flight rules. He would expect that out of concern for their lives, if for no other reason, the crew members were flying in conformance with FAA regulations." *Redhead,* 686 F.2d at 183. Thus, the controller, here, was entitled to assume that the pilots could see the terrain themselves. "It is not negligence not to repeat information already given or that is already known to the pilot." *Id.* The record demonstrates Garrison's lack of knowledge that the Lookout Mountain area, technically outside her scope of authority, posed special visibility hazards that day. The problem in this case seems to be that the pilots had taken an unwar-

ranted risk in flying VFR and may even have misrepresented flying conditions as permitting VFR flight. "The pilot of an aircraft is in control of the flight ... decisions that depend upon conditions known in detail only by the pilot must be made by him." *Id.* The surviving passenger testified that they were often flying through fog and clouds during the aborted flight. This fact would directly contravene VFR regulations. The homeowners near the crash site affirmed that thick fog drastically limited visibility both before and after the crash. The pilots did not file a flight plan or furnish themselves with readily-available maps that would have indicated the altitude of significant hills or obstructions. Garrison had no means to assume their lack of preparedness.

ed pilot practice apparently occurred. Certainly the controller must assist even careless pilots who, based on the facts known to the controller, have placed themselves in a dangerous position. The record before us does not, however, sufficiently establish that the controller could have known that this aircraft was subject to dangerous conditions.

The judgment of the district court is AFFIRMED.