LYNCH, Chief Judge.
Sadly, this court is once again addressing the legal aftermath of a small plane crash killing several people. It has been some years since we last had to decide such a case. See In re N-500L Cases, 691 F.2d 15 (1st Cir.1982); see also Fed. Express Corp. v. Rhode Island, 664 F.2d 830 (1st Cir.1981); Delta Air Lines, Inc. v. United States, 561 F.2d 381 (1st Cir.1977). We affirm the entry of judgment for the United States against plaintiffs’ claim of air traffic controller liability in a highly fact based tort case.
On the afternoon of January 5, 2002, a small Cessna Conquest airplane flown by Alexander Wojcieehowicz crashed into high terrain in the Carribean National Forest near the El Yunque mountain peak in Puerto Rico. Wojcieehowicz and his four passengers, members of his family, were killed. Plaintiffs, who include Wojciechowicz’s sxrrviving relatives, his and his daughter’s estates, the aircraft’s registered owner, and the aircraft’s insurer, sued the United States under the Federal Tort Claims Act (“FTCA”), 28 U.S.C. §§ 1346(b), 2671, alleging the air traffic controller on duty in San Juan, Marcos Santiago, was negligent.
After a twelve-day bench trial, the district coxirt ultimately found that Santiago could not have reasonably foreseen Wojciechowicz would take the actions he did, which were in direct violation of a pilot’s duties, that Santiago’s actions or inactions were not a proximate cause of the crash, and that Wojciechowicz’s own negligence was the sole cause of the crash. The court also found that the controller had not violated any duty of care; but even if the controller did violate a duty, the court found that any violation did not cause the crash. The judge apportioned no liability to the government. Wojciechowicz v. United States, 576 F.Supp.2d 241, 278 (D.P.R.2008).
On appeal, plaintiffs claim the district court primarily erred in finding there was no duty of care stemming from a Federal Aviation Administration (“FAA”) operations manual and FAA training instructions. They say this error infected the later findings, which, they say, are clearly erroneous anyway. First, they argue, the court exroneously held that ¶ 5-5-9 of the FAA Air Traffic Control Manual (“ATCM”), FAA Order 7110.65M, which requires controllers to maintain separation of aircraft from prominent obstructions depicted on the radar screen by specified minimum distances, did not apply to Wojciechowicz’s flight, which was under Visual Flight Rules (“VFR”) (as opposed to Instrument Flight Rules (“IFR”)), and that Santiago owed no duty to warn Wojciechowicz to change course. Second, they argue the court erred in holding that the air traffic control authority, the San Juan Combined Enroute and Radar Approach Control Facility (“CERAP”), was authorized to depart from the FAA’s curriculum in training Santiago and that it trained him adequately. See FAA Air Traffic Technical Training Manual, FAA Order 3120.4J.
The record supports the district court’s findings that plaintiffs nonetheless failed to meet their burden to show negligence or causation. We reject plaintiffs’ arguments that these findings were clearly erroneous and affirm.
*62 I.
We outline the facts. Greater detail may be found in the district court’s opinion. Wojciechowicz, 576 F.Supp.2d at 246-51.
Wojciechowicz owned a vacation home on Culebra Island and was an experienced pilot with nearly four thousand hours of flight experience. He had flown the route between Culebra Island and the San Juan airport over two hundred times and was familiar both with the approach to the airport and with El Yunque and the surrounding terrain. He was rated for flight under both IFR and VFR.
At approximately 2:00 p.m. that day, Wojciechowicz took off from Culebra Island, which is eighteen nautical miles east of the east coast of Puerto Rico, for a flight to San Juan International Airport. The trip can be completed in twenty to thirty minutes.
Wojciechowicz chose to fly under VFR. His choice had several consequences. Under VFR procedures, set forth in FAA regulations and the FAA-published Aeronautical Information Manual (“AIM”), a pilot navigates by observing the surroundings rather than by relying on instruments. As a pilot under VFR, Wojciechowicz was forbidden by FAA regulations from flying into clouds or into areas of reduced visibility unless he asked the controller for permission to do so. See 14 C.F.R. § 91.155; In re N-500L Cases, 691 F.2d at 28-29; Cappello v. Duncan Aircraft Sales of Fla., Inc., 79 F.3d 1465, 1467, 1469 (6th Cir.1996). Although he never asked for permission, the pilot did exactly that.
By contrast, pilots under IFR must file a special flight plan, must navigate by use of their instruments, and may not fly below Minimum Vectoring Altitude (“MVA”), which is generally set at two thousand feet above the elevation of the terrain. VFR pilots are not so restricted and may fly below both the MVA and the elevation of nearby terrain. See Biles v. United States, 848 F.2d 661, 663 (5th Cir.1988). In sparsely populated areas, such as the area in which the crash occurred, there is no restriction on how low a VFR pilot may fly except that the pilot must maintain a minimum distance of five hundred feet laterally from any structure, vehicle, or person. 14 C.F.R. § 91.119(c). Wojciechowicz operated under VFR procedures throughout the flight.
Wojciechowicz contacted CERAP by radio in San Juan at 2:18 p.m., about eighteen minutes after he left Culebra, to request landing at Luis Muñoz Marin International Airport in San Juan. He was then ten miles east of Fajardo, Puerto Rico, and traveling at 190 knots, or about three miles per minute. At 2:18:30 p.m., Santiago requested that Wojciechowicz “squawk” 0477 into his aircraft’s transponder to allow Santiago’s radar scope to better identify the aircraft.[1] Wojciechowicz complied. Santiago responded to Wojciechowicz’s landing request at 2:19:54 p.m., providing him with an approach vector to the airport from the traffic pattern south of Plaza Carolina and weather information for San Juan. Santiago asked Wojciechowicz to state his altitude. Wojciechowicz replied that he was at 1600 feet above sea level and stated he would stay south at Plaza Carolina. During his communications with Santiago, Wojciechowicz gave no indication that he was in any distress, that he was unaware of his altitude or location, that he could not *63 maintain his own separation from terrain, or that he was in need of navigation assistance.
This was the first and only conversation between the controller Santiago and the pilot and it took place between 2:18 and 2:20:37.
At that point, the plane was in clear air and had at least ten miles of visibility. That meant the pilot could clearly see the rising terrain to El Yunque ahead and the north coast of Puerto Rico, where the airport was, to his right. The pilot could also see there was a cloud base intersecting the rising terrain ahead.
After the conversation ended, the plane continued on Santiago’s radar for nearly one more minute but disappeared from the radar scope shortly before the accident. In the time the aircraft remained on the radar, Wojciechowicz made no further attempts to contact Santiago by radio. The last radar data for the plane was received at 2:21:18. After radar contact was lost, the plane’s data on the airport radar scope entered “coast” mode, in which the computer indicates radar contact is lost and predicts the aircraft’s position.[2] The last coast data was displayed at 2:21:42. Within forty-three seconds, Santiago was on the radio trying to get a response, without success, from the pilot. The endpoint, the crash, occurred at approximately 2:23 p.m. at a point 1.43 miles northeast of the El Yunque peak and at an elevation of 1561 feet (El Yunque itself is 3637 feet tall).
We return to what Santiago knew from the radar. At the point the plane disappeared from the radar, the plane was approximately 4.7 miles from the peak of El Yunque. Wojciechowicz at that point had ample visibility (of approximately three nautical miles) to allow him to see the clouds he was approaching ahead and an area of clear weather and lower terrain to the north to which he could safely turn. The government’s expert testified that Wojciechowicz could easily have avoided the crash by changing course. He testified that Wojciechowicz would have needed only seventeen to eighteen seconds to maneuver away from the accident site.
The district court made findings about what information was available to Santiago when there was radar contact. Santiago’s radar scope showed Wojciechowicz’s altitude above sea level and displayed MVA data for the surrounding area, but it did not display terrain features, the elevation of the terrain, or the aircraft’s altitude above the ground. The scope did display prominent obstructions, including El Yunque peak, which had a communications tower located on it. It did not, however, display the elevation of the tower or of El Yunque.
II.
Plaintiffs brought three lawsuits, seeking recovery for the wrongful deaths of Wojciechowicz and one of his passengers, contribution for money the insurers had paid to settle a state court suit brought by relatives of two other passengers, and contribution for funds paid by the insurer for the destruction of the aircraft. On December 10, 2004, the district court granted the government’s motion to consolidate the cases.
Plaintiffs conceded that Wojciechowicz had been negligent but argued the government was partially at fault for the crash. They claimed Santiago had negligently *64 failed to separate the flight from El Yunque peak by at least three miles, which they claim is required by ¶ 5-5-9 of the ATOM.[3] They also claimed CERAP had failed to train and test Santiago on significant terrain areas and obstructions as required by a curriculum contained in the FAA’s Air Traffic Technical Training Order, FAA Order 3120.4J.[4] They argued that had Santiago been more familiar with the terrain, he would have issued a safety alert to Wojciechowicz, and this alert would have resulted in avoidance of the crash.
Paragraph 5-5-9 of the ATCM, titled “Separation from Obstructions,” sits within Chapter 5 of the manual, titled “Radar,” and Section 5 of that chapter, titled “Radar Separation.” It states in relevant part:
[Sjeparate aircraft from prominent obstructions depicted on the radar scope ... by the following minima:
1. When less than 40 miles from the antenna — S miles.
2. When 40 miles or more from the antenna — 5 miles[5]
ATCM ¶ 5-5-9 (emphasis in original). Here, the required separation was three miles.
While plaintiffs’ case rests largely on ATCM ¶ 5-5-9 and the training order, also pertinent to the case are the FAA regulations, other provisions of the ATCM, and provisions of other FAA manuals. The FAA has promulgated regulations that govern pilots’ operations. See 14 C.F.R. pt. 91. These regulations have the force and effect of law, but here the plaintiffs do not claim a violation of the C.F.R. In addition, the FAA publishes operations manuals, including the ATCM for controllers and the AIM for pilots.
The controlling law of this circuit is that the ATCM is not a statute or a regulation but an internal FAA guideline issued to FAA controllers, which governs their conduct. As such, under our case law the ATCM is merely an indication of the standard of care. Fed. Express Corp., 664 F.2d at 835. Further, we treat “substantial” failures to adhere to the ATCM guidelines as “persuasive as an indication of a lack of due care.” Id. (quoting Delta Air Lines, Inc., 561 F.2d at 390).[6]
Independently of ¶ 5-5-9’s separation requirement, ATCM ¶ 2-1-6 requires a controller to issue a safety alert to the pilot if the controller is “aware the aircraft is in a position/altitude which, in [the controller’s] judgment, places it in unsafe proximity to terrain, obstructions, or other aircraft.”
The AIM, by contrast, is an FAA publication that explains to pilots the application of FAA regulations in different circumstances. Like the ATCM, the AIM is merely indicative of the standard of care. Id.; Delta Air Lines, Inc., 561 F.2d at 390. *65 Several of its provisions also discuss the conduct of air traffic controllers. Paragraph 5-5-8 of the AIM states that a pilot “is responsible to see and avoid other traffic, terrain, or obstacles.” That provision also says that a controller will issue a safety alert “if aware the aircraft is at an altitude believed to place the aircraft in unsafe proximity to terrain, obstructions, or other aircraft.”
A separate provision, ¶ 3 — 2—6(f), states that “no separation services are provided to VFR aircraft” in Class E airspace, the class of airspace in which Wojciechowicz was operating at all pertinent times. In addition, AIM § 4-l-17(e) provides that VFR pilots are not relieved of their responsibilities to “maintain appropriate terrain and obstruction clearance, or to remain in [VFR-appropriate] weather conditions” by the fact that they are receiving basic radar services from a terminal.
Finally, FAA Order 3120.4J is an FAA operating manual addressed to air traffic control authorities. It sets forth a national curriculum for training controllers. Two provisions of Order 3120.4J set forth training exercises under which a trainee is required to label or draw topographical features on an unlabeled chart of the local area and to identify significant terrain areas and obstructions on an unlabeled video map.[7]
The district court entered judgment in favor of the United States. It held that ATOM ¶ 5-5-9 did not apply to VFR flights but only to IFR flights. It further found that, even assuming ATOM ¶ 5-5-9 did apply to VFR flights, Santiago did not violate the provision because the last radar information he had for the flight came well before it entered the three-mile radius around El Yunque. Wojciechowicz, 576 F.Supp.2d at 269. Crediting the testimony of the government’s expert witness, Edward Henderson, that ¶ 5-5-9 requires a “radar separation,” the court held that “[wjithout the aircraft remaining in radar contact it would have been impossible for Mr. Santiago to apply the aforementioned radar separation criteria to N441AW. Thus, the provisions of [¶] 5-5-9 could not have been implemented because the aircraft was not visible on Mr. Santiago’s radar scope.” Id.
The court also found that Santiago did not violate his separate duty under ATOM ¶ 2-1-6. It found the data available to Santiago did not provide him with information about the plane’s proximity to terrain, and, because Wojciechowicz was operating as a VFR pilot, Santiago did not know his intentions as to his route. Santiago was therefore not aware that Wojciechowicz was in a position which, in Santiago’s judgment, placed him in unsafe proximity to terrain. Id. at 258-60.
As to the second issue, the court held that CERAP had leeway to adapt Order 3120.4J’s curriculum to local requirements and that it had adequately trained Santiago on terrain features by instructing him on local MVA information. Further, the court found, any deficiency in training did not cause plaintiffs’ harm. The general terrain knowledge the training would have provided would not have given Santiago sufficient information regarding the flight’s unsafe proximity to terrain to require the issuance of a safety alert. Id. at 259-60, 262.
*66 The district court also found that “even assuming arguendo that a duty had been owed and breached by the controller ..., plaintiffs ha[d] failed to prove that any such breach was the cause of the crash ... or that the pilot’s actions in this case were foreseeable.” Id. at 277. The court found that Wojciechowiez’s actions had been negligent and that his negligence was the sole cause of the accident. Plaintiffs appealed.
III.
In an appeal from a judgment following a bench trial, we review a district court’s findings of fact for clear error. Janeiro v. Urological Surgery Prof'l Ass’n, 457 F.3d 130, 138 (1st Cir.2006); Harrison v. United States, 284 F.3d 293, 297 (1st Cir.2002). We review questions of law de novo. Janeiro, 457 F.3d at 139. “The existence and extent of a duty of care are questions of law; whether any such duty has been breached and whether proximate cause exists are questions for the factfinder, whose determination is binding on appeal unless clearly erroneous.” Fed. Express Corp., 664 F.2d at 835.
We need not address the issue of whether ¶ 5-5-9 applies to controllers over VFR flights as well as over IFR flights.[8] We assume arguendo, in plaintiffs’ favor, that the provision applies to VFR flights.[9]
The FTCA grants district courts jurisdiction over claims
for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the cláimant in accordance with the law of the place where the act or omission occurred.
28 U.S.C. § 1346(b)(1).
Under the FTCA, the substantive law of the state where the injury occurred governs. See In re N-500L Cases, 691 F.2d at 27. It is undisputed that Puerto Rico law applies here; for these purposes, Puerto Rico is treated as a state. Negligence law in Puerto Rico is governed by the Civil Code, which imposes liability for an “act or omission” that causes damages to another through “fault or negligence.” P.R. Laws Ann. tit. 31, § 5141; see also Rodríguez-Quiñones v. Jiménez & Ruiz, S.E., 402 F.3d 251, 254 (1st Cir.2005). A plaintiff must prove injury, “a negligent or intentional act or omission (the breach of duty element),” and “a sufficient causal nexus between the injury and the defendant’s actions or omissions.” Vázquez-Filippetti v. Banco Popular De P.R., 504 F.3d 43, 49 (1st Cir.2007). A defendant is only liable for injuries “rea *67 sonably foreseeable to the defendant.” Irvine v. Murad Skin Research Labs., Inc., 194 F.3d 313, 322 (1st Cir.1999) (applying Puerto Rico law); see also In re N-500L Cases, 691 F.2d at 27-28 (same).
Foreseeability is a central element in Puerto Rico negligence law and underlies both the issue of breach and of proximate cause. Vázquez-Filippetti, 504 F.3d at 49. To establish proximate cause, a plaintiff must prove that the accident was “foreseeable and could have been avoided if the defendant had not breached its duty of care.” Grajales-Romero v. Am. Airlines, Inc., 194 F.3d 288, 296 (1st Cir.1999). Proximate cause is not proven if the defendant can show the occurrence of an intervening cause that was not foreseeable. Id.; see also Marshall v. Perez Arzuaga, 828 F.2d 845, 847 (1st Cir.1987) (noting that the causation requirement in Puerto Rico law “limits a party’s liability for hazards flowing from its negligence to those hazards that could be ‘anticipated by a prudent person’ ” (quoting Pacheco v. P.R. Water Res. Auth., 112 P.R. Offic. Trans. 369, 372 (1982))).
A separate issue is the duties of care owed respectively by controllers and pilots. The violation of FAA regulations, which have the force and effect of law, is negligence per se. See In re N-500L Cases, 691 F.2d at 28. The plaintiffs’ case is not based on a violation of regulations. Rather, it is based on FAA manuals, such as the AIM and the ATCM, which do not have the force of law but only provide evidence of the standard of care among pilots and controllers. Id. Still, “a substantial and unjustified failure to follow procedures made mandatory by the manual is persuasive as an indication of a lack of due care.” Fed. Express Corp., 664 F.2d at 835 (quoting Delta Air Lines, Inc., 561 F.2d at 390) (emphasis added).
Pilots are assumed to have read the AIM and FAA informational circulars and to know their provisions. In re N-500L Cases, 691 F.2d at 28. A controller is ordinarily entitled to assume, absent an objective manifestation of evidence to the contrary, that a pilot is complying with his own responsibilities under FAA regulations and those manuals and circulars. In re N-500L Cases, 691 F.2d at 31; Fed. Express Corp., 664 F.2d at 836-37. This has been our rule for some time and a number of other circuits have adopted the same rule. See, e.g., Thurston v. United States, No. 95-411, 1996 WL 579929, at *3 (10th Cir. Oct. 9, 1996) (mem.); Cappello, 79 F.3d at 1468; Biles, 848 F.2d at 663; Redhead v. United States, 686 F.2d 178, 183 (3d Cir.1982).
It is also clear, to be sure, that if the controller were negligent and if this were a proximate cause for the accident, liability could be apportioned to the controller. See Rodriquez v. United States, 823 F.2d 735, 745-46 (3d Cir.1987). But liability may be imposed only if it is foreseeable that the controller’s negligent conduct will cause injury. A plaintiff who establishes the government breached its duties must show that the negligent conduct is a legal cause of the harm. Delta Air Lines, Inc., 561 F.2d at 394. The actions of the controller must be judged against what a reasonable person, under the same or similar circumstances, would have done. See W.P. Keeton et al., Prosser and Keeton on the Law of Torts § 37, at 236-37 (5th ed.1984).[10]
*68 A. Plaintiffs’ Claims under ATCM ¶ 5-5-9 (Controllers’ Duties as to Separation from Obstructions)
The government argues that the standard of care under ¶ 5-5-9 of the ATCM, assuming it applies to VFR flights at all, turns on what a reasonable controller in Santiago’s situation would have done given the information he had available to him, the fact that Wojciechowicz was operating as a VFR pilot, and the fact that at a point before the buffer zone the plane was no longer on the controller’s radar screen.
Plaintiffs’ core argument is that Santiago was in breach of the ATCM ¶ 5-5-9 and that this was negligence per se, so they need not prove causation. As required by our precedent, we reject the argument that the ATCM has the same effect as a regulation and that any violation would be negligence per se. Fed. Express Corp., 664 F.2d at 835.
Plaintiffs also argue that they have established both a violation of ¶ 5-5-9 and causation. They say that although the last radar data Santiago received showed the flight was 4.7 miles from El Yunque peak, outside of the three-mile buffer, (a) ¶ 5-5-9 nonetheless required Santiago to issue a warning to Wojciechowicz at some point before he entered the buffer, and (b) this warning was necessary to allow the pilot adequate time to change course. The latter proposition is simply untrue on the record. We turn to the first contention.
Plaintiffs’ theory is that even though Santiago could not have foreseen Wojcieehowicz’s actions, that is immaterial because Santiago was under a legal duty to keep a separation of three miles between the plane and the El Yunque tower marked on his radar and because the controller breached this duty by not issuing a separation order well before the plane neared the buffer zone. If Santiago had done so, they argue, Wojciechowicz would have been alerted to the danger and would have changed course.
This argument goes to when separation must be maintained. It suffers from the obvious problem that there was no violation of the plain text of ¶ 5-5-9, which states only the three-mile separation minimum. The provision contains no mandatory language stating when a controller must take action to attempt to maintain a separation. Given the lack of mandatory language in ¶ 5-5-9 on the issue of when to maintain the separation, the district court correctly understood the question posed by plaintiffs as one of what a reasonable controller would have done on these particular facts.[11]
Further, plaintiffs have not articulated any clear theory on when separation must be initiated. James Parham, plaintiffs’ expert on air traffic control procedures, testified that a reasonable and prudent controller would have given a separation order when Wojciechowicz was seven miles away from El Yunque and four miles from the three-mile buffer zone to give the pilot time to comply and to avoid the obstruction. However, this was merely Parham’s opinion; Parham did not testify about actual practice under ¶ 5-5-9.
Under our case law, actual practice under a regulation or ordinance is important to determining its meaning and may become another source of a legal obligation. See, e.g., Pelletier v. Main St. Textiles, LP, 470 F.3d 48, 55-56 (1st Cir. *69 2006); South Shore Hosp., Inc. v. Thompson, 308 F.3d 91, 102-03 (1st Cir.2002); Delta Air Lines, Inc., 561 F.2d at 389-90 & n. 5. No evidence of actual practice from the plaintiffs as to the interpretation of ATOM ¶ 5-5-9 was admitted. The court was not required to accept Parham’s view, which was inherently inconsistent with the testimony of the government’s expert.
The district court found that a reasonable controller, given the facts of this case, would not have separated the flight at (or before) 4.7 miles.[12] That was because it was more reasonable for the controller at that point to rely on the VFR pilot, who, the controller could assume, was complying with his duties to see and avoid terrain and obstacles and to maintain VFR-minimum visibility. The pilot then had clear visibility. Wojciechowicz had given no indication that he was in distress or unable to comply with his obligations, and he would have had ample time to change course at four miles out.[13]
The court’s finding was not clear error. Wojciechowicz was under a legal duty to know the route and to have consulted maps of the area. See Cappello, 79 F.3d at 1468. There is no serious contention that the pilot did not know where El Yunque was. In contrast, Santiago did not then know the plane’s course or altitude or whether it was approaching or turning away from the obstruction, El Yunque. And of course, the plane disappeared from Santiago’s radar and Santiago’s attempts to reestablish contact with it were unsuccessful.
Moreover, the government proffered a separate defense that ¶ 5-5-9 could not apply under these circumstances. First, the court accepted the testimony from the government expert, Edward Henderson, elicited on cross-examination by plaintiffs’ counsel, that even assuming ¶ 5-5-9 applied to VFR flights, there was no violation of ¶ 5-5-9 here because, flying under VFR, the pilot could have changed direction or altitude at any time and the controller would therefore not have known whether the aircraft came within three miles of El Yunque. He further testified that ¶ 5-5-9 requires “a radar separation. And [Santiago did not] have radar on the aircraft” after the plane disappeared from the radar screen. This testimony, against the background facts, is consistent with and sufficient to support the district court’s conclusion that there was no breach of any standard of care under ¶ 5-5-9, even assuming it applied to VFR flights, and further, beyond duty, that there was no causal connection.[14]
Plaintiffs have also failed to show clear error in the court’s finding that, even if Santiago had owed and breached a duty under ¶ 5-5-9, there was no causal connection between any breach by Santiago and the accident, or the court’s findings that the accident was not foreseeable to Santiago.
*70 Wojciechowicz was already required by FAA regulations to change course and avoid flying into the clouds. Those clouds intersected with the terrain near the crash site and obscured visibility. See 14 C.F.R. § 91.155; Cappello, 79 F.3d at 1469. The district court concluded that “[h]ad Mr. Wojciechowicz not entered the clouds he would have had ample time to see and avoid the terrain with which he ultimately collided.” Wojciechowicz, 576 F.Supp.2d at 255. The court supportably found the cause of the crash was not that the flight came closer than three miles to the radar tower on El Yunque or that it was flying in high terrain, but that the pilot flew into a cloud in violation of FAA regulations.
Further, as the district court found, Santiago could not have reasonably foreseen that Wojciechowicz would take the actions that the district court found led to the accident, specifically “fly[ing] into a cloud while traversing rugged, rising terrain at low altitude and high speed.” Wojciechowicz, 576 F.Supp.2d at 277. A VFR pilot can change course and altitude at any time and without need to obtain permission from the controller. See In re N-500L Cases, 691 F.2d at 31; Cappello, 79 F.3d at 1469. Santiago had no reason other than speculation to think that the flight was heading directly into a cloud.
B. ATCM ¶ 2-1-6 (Safety Alert)
Plaintiffs argue that Santiago was also in breach of his duty under ATCM ¶ 2-1-6 to issue a safety alert to Wojciechowicz because of his unsafe proximity to the terrain. Whether this provision is evidence giving rise to a duty in the controller to issue a safety alert turns on the information available to the controller. The duty arises when the controller is “aware that the aircraft is in a position or altitude which, in the controller’s judgment, places the aircraft in unsafe proximity to terrain or obstructions.”[15] Wojciechowicz, 576 F.Supp.2d at 258 (emphasis in original). Here, the district court support-ably found these provisions did not apply to Santiago. Santiago only had information on the flight’s altitude above sea level; he had no information about the elevation of the surrounding terrain, the aircraft’s altitude over the ground, or its proximity to any terrain or obstacles (aside from its distance from the tower on El Yunque). When the flight disappeared from Santiago’s radar shortly before the crash, he had even less information about the flight. Nor was there any indication from Wojciechowicz before then that he was in distress.
Plaintiffs argue that Santiago should have known the aircraft was in unsafe proximity to terrain because it was flying toward El Yunque peak at an altitude below the peak’s elevation. The district court made a finding rejecting this argument. Wojciechowicz, 576 F.Supp.2d at 260. There is no clear error in the district court’s conclusion that the information available to Santiago, who knew Wojciechowicz was operating under VFR procedures and who received no distress calls from the pilot, was insufficient to alert Santiago to the fact that Wojciechowicz had placed himself in a dangerous position. See id. at 259-60. A VFR pilot flying in a sparsely populated area may fly close to the ground and below the altitude of surrounding terrain, so long as minimum visibility is maintained. 14 C.F.R. §§ 91.119(c), 91.155(a); see Biles, 848 F.2d at 663.
*71 C. Plaintiffs’ Claim under Courses 55060 and 55065 of the Air Traffic Technical Training Order
Plaintiffs’ arguments related to alleged deficiencies in Santiago’s training fail for similar reasons.[16] Essentially, they argue that certain FAA training guidelines have the force of law and that CERAP’s failure to follow the training led to Santiago being unfamiliar with the terrain and obstructions in his area of responsibility and that because of his unfamiliarity, he did not recognize the danger of Wojciechowicz’s situation. They argue this led Santiago to fail to issue a safety alert as required under ATOM ¶2-1-6.[17]
The district court accepted Santiago’s testimony that he was familiar with the location of El Yunque and the mountains but not with every peak and valley. The court also found that even if Santiago had been aware of the high terrain over which Wojciechowicz was flying, he would not have been aware that the aircraft was in unsafe proximity to the terrain because of the lack of terrain information on his radar scope, the fact that he only knew the aircraft’s elevation above sea level rather than its elevation above the ground, and the fact that he had no reason not to presume that Wojciechowicz was complying with VFR flight procedures. Wojciechomcz, 576 F.Supp.2d at 259-60. The court also found that general terrain knowledge would not have led Santiago to be aware that the flight was in unsafe proximity to terrain and that a safety alert was therefore required. Id. at 262.
The bottom line is that there was no clear error in the court’s finding that the purported lack of training plaintiffs rely on did not cause Santiago’s inaction. In the end, the district court found that there was no foreseeability and no causal relationship between any breach by Santiago and the plaintiffs’ injury. These may be mixed questions of fact and law, but they are components of negligence, so our review is for clear error. See Fed. Express Corp., 664 F.2d at 835. There was no clear error here.
Plaintiffs’ only argument that the court clearly erred is, again, that because the aircraft was flying toward El Yunque at an altitude lower than the elevation of the peak, Santiago should have known the aircraft was in unsafe proximity to the terrain. For the reasons stated earlier, this argument fails.
D. Conclusion
Given the evidence and our standard of review in this fact based case, we find no reversible error.
The district court’s judgment is affirmed.

. A controller gives a pilot a "squawk," or a radar identification code, for the pilot to input into the plane's transponder that identifies the flight on the radar scope. See Cappello, 79 F.3d at 1468 n. 1.

. Plaintiffs say that Santiago also had available to him a "vector link," a feature that, when activated by the controller, displayed the computer’s prediction of where the aircraft would fly minutes into the future. This information is immaterial to the district court’s findings.

. The United States argued that Santiago had no duty under ¶ 5-5-9 to separate Wojciechowicz’s flight from El Yunque because ¶ 5-5-9 applies only for IFR flights and that even if Santiago had a duty to separate Wojciechowicz’s flight, he did not breach his duty.

. The government argued that local air traffic control authorities had the authority to modify Order 3120.4J’s curriculum and that Santiago had received adequate training.

. The provision refers to two exceptions. It does not apply in "En Route Stage A/DARC or Stage A/EDARC.” There is nothing in the record about these exceptions, but the parties agree they do not apply to this case.

. In arguing that the ATCM carries the force of law, the dissent mischaracterizes the law in this circuit. This panel is bound by circuit precedent, which only an en banc court can change. United States v. Lizardo, 445 F.3d 73, 88 (1st Cir.2006).

. Plaintiffs cite Courses 55060 and 55065. Course 55060 states, "Given an unlabeled chart of the local area ... the individual shall label or draw the following: ... Topographical features.” Course 55065 states, "Given an unlabeled video map/overlay, the individual shall identify all items, plus ... Significant terrain areas and obstructions.”

. Paragraph 5-5-9 is itself silent on the issue; other ATCM provisions specify that they apply exclusively to one or the other type. This may show that the FAA would have specified that ¶ 5-5-9 applies only to IFR flights if that were the agency’s intention. However, it may be reasonable to think, given the regulatory framework applicable to VFR pilots, that ¶ 5-5-9 does not apply to VFR flights because the pilot of the VFR aircraft is assumed to be able to see obstructions and to avoid them.

. We also do not address the issue of whether plaintiffs' claim is ever cognizable under the FTCA, given AIM ¶ 3-2-6(f)'s express disclaimer that separation services are not provided to VFR aircraft in Class E airspace. Governmental liability in airline tort cases is based on the limiting principle that "[o]nce the Government undertakes to provide services otherwise not required of it,” it is liable for negligent performance of those services. Delta Air Lines, Inc., 561 F.2d at 389; see also Davis v. United States, 824 F.2d 549, 550-51 (7th Cir.1987). Thus, we make an assumption in plaintiffs' favor.

. Plaintiffs often ignore this principle by proceeding backwards from the information now known and arguing about whether Santiago’s actions were reasonable given this knowledge. The appropriate inquiry focuses on what was known to the controller at the time. Kelley v. Schlumberger Tech. Corp., 849 F.2d 41, 45 (1st Cir.1988).

. The dissent, contrary to our law, characterizes this question as one of law for a judge to decide and not a question of fact. The reasonableness of a controller's action is in this case a question of fact. Thus we have held that “[i]n deciding what a reasonable person could do, a jury's latitude is considerable.” Rodríguez-Quiñones, 402 F.3d at 256.

. The dissent advances a new theory that the controller had a duty to separate within thirty seconds after the last coast data disappeared from his radar scope; however, this was not argued by any party to the case.

. Contrary to the dissent, this case does not turn on any rule that mere loss of radar contact, regardless of the surrounding circumstances, would vitiate a legal duty which had already arisen under ¶ 5-5-9.

. There was also no evidence presented that Santiago could have reached the plane by radio contact if he had tried to do so instantaneously with losing radar contact or at any point before the crash, or that the pilot was then in control of the plane. Plaintiffs bear the burden of proof.

. We recognize but do not resolve the issue of whether this discretionary language triggers the discretionary function exception to the FTCA. See Fothergill v. United States, 566 F.3d 248, 252 (1st Cir.2009).

. We do not reach plaintiffs' argument that the district court erred in holding that CERAP had leeway to depart from the FAA's national training directives.

. Plaintiffs' argument that ¶ 2-1-6 required Santiago to issue a safety alert is distinct from an argument they made to the district court that Santiago was under a duty to issue a safety advisory because of the presence of high terrain in the area. See Wojciechowicz, 576 F.Supp.2d at 266-67. Plaintiffs give no citation to support the notion that there is a free-standing obligation to issue a safety advisory. The district court rejected the latter argument and plaintiffs have not challenged this holding on appeal.