# United States Court of Appeals
## For the First Circuit

No. 13-1498

BLANCA CALDERÓN-ORTEGA,

Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Marcos E. López, U.S. Magistrate Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

Jorge Martínez-Luciano, Emil Rodríquez-Escudero, and Martínez-Luciano & Rodríquez-Escudero on brief for appellant.
Rosa Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, on brief for appellee.

May 16, 2014

**SELYA, Circuit Judge.** When a dangerous condition is present on commercial premises and injury results to a business invitee, tort liability often turns on whether the owner or occupier knew or reasonably should have known of the existence of the hazard. See, e.g., García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013); Gomez v. Stop & Shop Supermkt. Co., 670 F.3d 395, 397 (1st Cir. 2012). This is such a case and, in the wake of a bench trial, the district court concluded that the evidence failed to show that the defendant had the requisite knowledge (actual or constructive). Accordingly, the court entered judgment for the defendant. After careful consideration, we affirm.

We start by rehearsing the origin and travel of the case. Our task is simplified because the parties have stipulated to many of the facts.

On January 27, 2010, plaintiff-appellant Blanca Calderón-Ortega visited the Fort Buchanan Post Exchange store (PX) in San Juan, Puerto Rico. The PX is located on the grounds of the military base and is operated by the Army and Air Force Exchange Service. After the plaintiff had shopped for a while, she proceeded toward the check-out area to pay for her purchases. En route, she slipped on liquid that was present on the floor in front of one of the cash registers.

The shift manager was summoned and responded promptly. He offered to call an ambulance, but the plaintiff declined and left the premises. The next morning, she sought medical treatment. Following a series of doctors' visits, she was diagnosed as having a seven-percent whole-person impairment stemming from the fall.

The plaintiff filed an administrative claim against the United States, and the statutory period allowed for consideration of her claim expired without a disposition. See 28 U.S.C. § 2675(a). She then repaired to the federal district court and sued under the Federal Tort Claims Act (FTCA), id. §§ 1346(b), 2671-2680. Her complaint averred that PX personnel had been negligent both in preventing the spill and in failing to clean up the liquid.

The parties consented to proceed before a magistrate judge. See id. § 636(c); Fed. R. Civ. P. 73. Following some preliminary skirmishing not relevant here, the district court (in the person of the magistrate judge) conducted a bench trial. At the close of all the evidence, the court reserved decision and solicited post-trial briefs. Several weeks later, the court handed down an opinion in which it found the defendant not liable for the plaintiff's injuries. See Calderón-Ortega v. United States, No. 11-1771, 2013 WL 427209, *1 (D.P.R. Feb. 4, 2013). The court determined that the plaintiff's failure to establish the

defendant's actual or constructive knowledge of the spill was dispositive. See id. at *7. This timely appeal ensued.

We previously have explained that "an appellate court will displace factual findings made in the aftermath of a bench trial [only] if those findings are clearly erroneous." United States v. 15 Bosworth St., 236 F.3d 50, 53 (1st Cir. 2001). Even so, we review the trier's conclusions of law de novo. See Wojciechowicz v. United States, 582 F.3d 57, 66 (1st Cir. 2009).

As a sovereign nation, the United States is open to tort liability only insofar as it consents to be sued. See Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013). To this end, "[t]he FTCA comprises a limited waiver of federal sovereign immunity, which allows the government to be held liable for certain tortious acts and omissions." Id. The FTCA mandates that an inquiring court must look to "the law of the place where the act or omission occurred" when making a liability determination. 28 U.S.C. § 1346(b)(1). In this case, then, we must extract the substantive rules of decision from Puerto Rico law.

Under Article 1802 of the Puerto Rico Civil Code, "[a] person who by an act or omission causes damage to another through fault or negligence" may be held liable for the damage. P.R. Laws Ann. tit. 31, § 5141. To establish liability, the plaintiff must show that the defendant owed a duty to the plaintiff, that the duty

-4-

was breached, that damages resulted, and that those damages were caused by the breach of duty. See Nieves-Romero, 715 F.3d at 378-79 (citing Sociedad de Gananciales v. González Padín Co., 17 P.R. Offic. Trans. 111, 125 (P.R. 1986)).

In the case at hand, the first element of the claim is apparent: one who operates a business for profit undeniably owes a duty of reasonable care to business invitees. See Cotto v. Consol. Mut. Ins. Co., 16 P.R. Offic. Trans. 786, 793 (P.R. 1985). Our inquiry, however, stops with the second element: breach of duty.

A business invitee who alleges a breach of the duty owed by the owner or occupier of commercial premises normally must show "that the injury was reasonably foreseeable (and, thus, could have been avoided had the defendant acted with due care)." Woods-Leber v. Hyatt Hotels of P.R., Inc., 124 F.3d 47, 50-51 (1st Cir. 1997); see Coyne v. Taber Partners I, 53 F.3d 454, 459-60 (1st Cir. 1995). It follows, therefore, that "[i]n a premises liability case, fault ordinarily depends on knowledge." Nieves-Romero, 715 F.3d at 379; see Woods-Leber, 124 F.3d at 50 n.5 (noting that "Puerto Rico law ordinarily requires a demonstration of the owner's or occupier's actual or constructive knowledge of the harm-causing condition").

There is no showing of actual knowledge of the dangerous condition (the spilled liquid) here. The district court found that neither the cashier stationed near the aisle where the liquid had spilled nor any other employee of the PX knew of the spill at any

time prior to the plaintiff's fall.  See Calderón-Ortega, 2013 WL 427209, at *5.  This finding is consistent with the record,[1] and we cannot say that it is clearly erroneous.  Thus, the case turns on the evidence or lack of evidence that the defendant had constructive knowledge of the liquid on the floor.

In an effort to substantiate her claim of constructive knowledge, the plaintiff labors to convince us that the spill could have been discovered by reasonable inspection.  Her argument has two facets.

First, the plaintiff contends that the PX's staff neglected to adhere to the PX's established inspection policies.  This contention leans heavily on the cashier's testimony that she was trained to inspect her surroundings "[a]s often as possible," but that on the day of the accident she did not perform any such inspections because she was kept busy by a steady stream of customers.

The district court met this facet of the plaintiff's argument head-on.  It supportably found that the cashier's primary responsibility was to deal with customers and that it was "[n]ot protocol for a cashier to step out from behind the cash register to

_____

[1] To be sure, the plaintiff testified that the shift manager told her that he had seen the spilled liquid beforehand.  But the district court did not credit this testimony, and we cannot second-guess the court's credibility determination.  See, e.g., United States v. Natanel, 938 F.2d 302, 313 (1st Cir. 1991) (emphasizing that "the district court must be given wide rein to assess . . . and judge the credibility of witnesses").

check for hazards." Calderón-Ortega, 2013 WL 427209, at *5 (alteration in original) (internal quotation marks omitted). The court also found as a fact that the primary responsibility for detecting spills lay with the shift manager, see id.; and the record discloses, without contradiction, that the shift manager performed his routine inspections in a diligent and timely fashion on the day of the incident, see id. at *7. Those inspections revealed nothing amiss.

Second, the plaintiff maintains that the PX's protocol for preventing and detecting spills was inadequate. Here, too, the plaintiff's position is at odds with the record.

The district court found that the PX had a number of relevant policies in place. Pertinently, the shift manager was responsible for checking the premises every twenty to thirty minutes in order to ensure that the floors were clear. If the shift manager (or any other employee, for that matter) spotted a spill, the person who made the discovery was enjoined to block off the area immediately and either clean up the spill or call for someone else to do so. The district court's finding that these protocols were fully observed on the day of the incident is supported by the record and is not clearly erroneous. See Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990) (explaining that a finding is not clearly erroneous unless it gives rise to an "unyielding belief that a mistake has been made").

-7-

Relatedly, the plaintiff asserts that the cashier, not the shift manager, should have inspected the area in front of the cash register. This bald assertion is insufficient to establish liability: speculation that different policies could have been put into place, untethered to any proof of differing levels of efficacy, is insufficient by itself to ground an inference of negligence.[2] See, e.g., Nieves-Romero, 715 F.3d at 379.

As a fallback, the plaintiff suggests that the spill may have been caused by leakage from bags of ice that were on sale in the PX. Even if this is so — and there is no real proof of it — the PX had in place protocols, including signage, to prevent spills from leaking bags of ice. The record contains nothing beyond conjecture that suggests that these protocols were violated.

In all events, it was the plaintiff's burden to "place the court in a position to make a clear and specific determination on negligence." Cotto, 16 P.R. Offic. Trans. at 794. The district court supportably found that the plaintiff failed to carry this burden.[3] See Calderón-Ortega, 2013 WL 427209, at *7. The

---

[2] We note, moreover, that even if the cashier had periodically inspected the area in front of the cash register, the record contains no evidence sufficient to support a finding that the hazardous condition about which the plaintiff complains would have been discovered in time to prevent the accident. For aught that appears, the spill may have happened only moments before the plaintiff slipped.

[3] The plaintiff assails the district court for its reference to Ramos Rosado v. Wal-Mart Stores, Inc., 165 D.P.R. 510 (P.R. 2005). She correctly observes that this decision has no

plaintiff has neither adduced any evidence that these inspection procedures were violated nor developed any cogent explanation as to why any other procedures should have been employed.

We add a coda. The plaintiff's arguments are couched in strong language. She claims, for example, that "[o]n the record of this case it is impossible to conclude that defendant met" the applicable standard of care. Appellant's Br. at 4. But rhetoric is not a surrogate for proof, and the plaintiff has offered no proof — let alone preponderant proof — from which the district court reasonably could have concluded that the spilled liquid was on the floor for a sufficient interval to put the PX on constructive notice of its presence. Given this dearth of evidence, we cannot say that the district court erred in holding that the plaintiff failed to prove her case. See, e.g., Mas v. United States, 984 F.2d 527, 530 (1st Cir. 1993) (explaining that, in a premises liability case, a plaintiff must affirmatively show "that the defendant has either actual or constructive knowledge of a dangerous condition").

---

precedential effect because it is only a judgment of the Puerto Rico Supreme Court, not a full-dress opinion. See Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 20 n.12 (1st Cir. 2001). This attack misfires: even though a judgment of the Puerto Rico Supreme Court (as opposed to an opinion) does not constitute binding authority, its rationale nonetheless may have intrinsically persuasive force and may be relied upon to that extent. See Rivera Maldonado v. Estado Libre Asociado, 19 P.R. Offic. Trans. 88, 95 (P.R. 1987). We are confident that the court below embraced the judgment in Ramos Rosado only for the persuasiveness of its reasoning.

We need go no further. Stripped of rhetorical flourishes, the plaintiff's real complaint is that the district court did not hold the defendant liable as an insurer of the plaintiff's safety. But even though an owner or occupier of commercial premises must exercise due care for the safety of its patrons, it is not liable in tort without a showing of fault. <u>See</u> <u>Vázquez-Filippetti</u> v. <u>Banco Popular de P.R.</u>, 504 F.3d 43, 49 (1st Cir. 2007).

**<u>Affirmed</u>.**