# United States Court of Appeals
## For the First Circuit

No. 16-1756

CONGREGATION JESHUAT ISRAEL,

Plaintiff, Appellee,

v.

CONGREGATION SHEARITH ISRAEL,

Defendant, Appellant.

Before,

Howard, Chief Judge,

Souter, Associate Justice,[*]

Torruella, Baldock, [**] Lynch, Thompson, Kayatta, and Barron, Circuit Judges.

**ORDER OF COURT**
**Entered: June 7, 2018**

Appellee Congregation Jeshuat Israel's (CJI) petition for rehearing having been denied by the panel of judges who decided the case, and the petition for rehearing en banc having been submitted to the active judges of this court and a majority of the judges not having voted that the case be heard en banc, it is ordered that the petition for rehearing and the petition for rehearing en banc be denied.

**SOUTER, Associate Justice, joined by Baldock and Lynch, Circuit Judges, statement regarding denial of panel rehearing.**

The panel includes the following response in the panel's vote to deny rehearing.

The rehearing petitioner, CJI, appears to assert at one point (p. 8) that the panel opinion holds that in litigation of religious property disputes "the trier-of-fact must consider only 'deeds, charters [and] contracts,' to the exclusion of all other secular evidence." This is an erroneous characterization of the panel opinion, which holds only that when such items of evidence "and the like are available and to the point . . . they should be the lodestones of adjudication in these cases."

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

[**] Hon. Bobby R. Baldock, Circuit Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

The holding does not otherwise purport to impose any categorical limitation on competent evidence in such cases.

Both CJI and the Attorney General of Rhode Island, in the brief supporting CJI, misstate that the panel opinion holds that CSI is free of any trust obligation as owner of the real and personal property subject to dispute. The court holds no such thing. The opening paragraph summarizes the holding that CSI holds the property "free of any civilly cognizable trust obligations to CJI" (emphasis added), and the more detailed conclusions at the end, in part III, state the holding to be "as between the parties in this case." The opinion does not address the possibility of a trust obligation to a non-CJI Newport "Jewish society" as beneficiary. No such claimant was a party in the litigation, and no such issue was resolved explicitly or implicitly by the panel. As indicated above, the opinion neither states nor implies any particular limitation on the scope of admissible evidence in any further litigation brought by a trust claimant other than CJI. In sum, the panel holding is consistent with the Attorney General's observation that CJI may not be the exclusive beneficiary of any trust there may be, and the holding is limited to the present parties, their controversies and their particular, contractual and contractually documented relationship.

The mischaracterization of the holding as applying to possible claimants other than CJI leads to a further assertion by the Attorney General that the (erroneously characterized) global ruling that CSI has no possible trust obligation to anyone or to any "Jewish society" other than CJI violates the Rhode Island rule of trust common law, that one public charitable trust beneficiary cannot effectively consent to the termination of the trust, to the prejudice of any other beneficiaries. Since the erroneous statement about the scope of the panel's holding is the premise for invoking this rule of trust law, the rule has no application.

With respect to the dissent from denial of en banc rehearing, the panel notes that the scope of its review of the trial court's findings is limited by the dispositive significance of the record evidence of the present parties' contractually established relationship. Accordingly, the panel holding of that dispositive character under controlling federal law in this case implies no limitation on the relevance of any rule of Rhode Island law or of any item of evidence that might be raised or offered by a party other than CJI in support of a claim to a trust benefit, the possible details of which are not before us.

**THOMPSON, <u>Circuit Judge</u>, dissenting from the denial of rehearing en banc.**

I dissent from the order denying the petition for rehearing en banc because I am concerned that my colleagues' opinion thwarts our well-established standard of review for a district court's decision following a bench trial and because my colleagues haven't discussed long-standing Rhode Island law that could lead to different legal conclusions in the fact-intensive issues presented by this difficult case.

On a de novo review, a panel is certainly entitled to engage in a different analytical approach to the legal issues than that explored by the trial judge. But the panel engages its review without first establishing how the trial judge's findings of fact clearly erred. This strikes me as at odds with our established standard of review when we are presented with a decision issued after a bench trial. Traditionally, questions of law are determined de novo, but factual findings are

reviewed for clear error only. Kosilek v. Spencer, 774 F.3d 63, 98 (1st Cir. 2014) (en banc) (Thompson, J. dissenting) (citing Wojciechowicz v. United States, 582 F.3d 57, 66 (1st Cir. 2009)). To that end, we are supposed to "accept the court's factual findings, and the inferences drawn from those facts, unless the evidence compels us to conclude a mistake was made." Id. (citing Janeiro v. Urological Surgery Prof'l Ass'n, 457 F.3d 130, 138 (1st Cir. 2006)). When an appeal presents issues that involve both legal and factual inquiries, our review slides along a continuum; "[t]he more fact-intensive the question, the more deferential our review" whereas "the more law-dominated the query, the more likely our review is de novo." Id. (citing Johnson v. Watts Regulator Co., 63 F.3d 1129, 1132 (1st Cir. 1995)).

As the trial judge's decision shows, this case is clearly fact intensive and involves events and documents that go back a few centuries. While the panel credits him for his "conscientious and exhaustive historical analy[tical]" approach to the competing claims and for "scrupulous[ly] . . . avoiding any overt reliance on doctrinal precepts," it then engages in a de novo review of the entire case without demonstrating any deference to his findings of fact and without declaring, never mind demonstrating, that the trial judge's findings of fact are clearly wrong. After acknowledging the trial judge's effort, they pivot to their analysis with a simple "[t]hese are circumstances in which we think that the First Amendment calls for a more circumscribed consideration of evidence than the trial court's plenary enquiry into centuries of the parties' conduct by examining their internal documentation that had been generated without resort to the formalities of the civil law."

The panel proceeds to emphasize secular documents such as deeds, charters, contracts, and the like as "the lodestones of adjudication" in cases such as this one where the court is tasked with resolving a property dispute while dodging improper entanglement in a religious controversy. Indeed, the trial judge's comprehensive and thorough decision highlights several such documents that are part of the voluminous record in this case. But the panel only picked four contracts to support its conclusion that "CSI owns both the [R]imonim and the real property free of any civilly cognizable trust obligations to CJI": a settlement agreement from earlier litigation between CSI and CJI; a lease between the parties; an agreement between the parties and the then-Acting Secretary of the Interior about the preservation of the property as one of national historical significance; and an agreement between CJI, the Society of Friends of Touro Synagogue, and the National Trust for Historic Preservation spelling out the terms for operating the property as a historic site. While diving deep into these four contracts, the panel summarily dismisses a couple of documents the trial judge had relied on, including legislation passed in 1932 by the Rhode Island General Assembly and a series of deeds signed in 1894. And nowhere does it mention a 1787 will that the trial judge had found was "incontrovertible evidence that Touro Synagogue was owned in trust."

An examination of some of the other secular documents upon which the trial judge relied confirms my belief that this case should be reheard by our entire court. I'll start with legislation passed by the Rhode Island General Assembly in 1932. The panel's conclusion that CSI owns the Touro synagogue, property, and Rimonim "free of any trust or other obligation to CJI . . ." flies in the face of the plain language of this 1932 legislation. In that year, the Rhode Island General Assembly passed "an act exempting from taxation certain property in the city of Newport held in trust for the Congregation Jeshuat Israel." If the title of the legislation wasn't enough of an indication that CJI is a beneficiary of a trust, section 1 says:

> The property located on the corner of Touro and Division streets in the city of Newport held in trust for the benefit of the Congregation Jeshuat Israel and used by said congregation for religious and educational purposes is hereby exempted from all taxes assessed by the city of Newport as long as said property shall be used by said congregation for religious and educational purposes. (Emphasis added.)

Clearly the trust mentioned in the title of the legislation refers to the Touro synagogue and the real property on which it sits. This legislation, passed after the 1903 litigation settlement agreement and the 1903 lease contract, clearly indicates that the state of Rhode Island considers the property to be held in trust for the benefit of CJI.

In a footnote, the panel acknowledged that this legislation was relevant to determine the appropriate resolution to the property dispute, but quickly dismissed its significance because the act did not "reveal whether the trustees were those of CSI or CJI itself, let alone what difference it would make in this litigation." I have three problems with the panel's cursory dismissal of this evidence. First, the panel doesn't acknowledge the act's express statement that the property was held in trust for the benefit of CJI. Second, the panel does not conclude that the trial judge clearly erred by relying on this evidence to support a trust in which CJI was the beneficiary. Third, and most important, the Rhode Island Supreme Court has always been clear that it would not "permit a valid charitable trust to fail for want of a competent trustee, but [would] appoint a trustee to carry out the charitable intent of the testator." Taylor v. Salvation Army, 49 R.I. 316, 142 A. 335, 336 (1928) (citing Tillinghast v. Council at Narragansett Pier, R.I., of the Boy Scouts of America, 47 R.I. 406, 133 A. 662 (1926); Guild v. Allen, 28 R.I. 430, 67 A. 855 (1907); Wood v. Fourth Baptist Church, 26 R.I. 594, 61 A. 279 (1905)). While the "incompetent trustee" in Taylor was a reference to an unincorporated association, the principle is clear: the court will not overlook an otherwise valid charitable trust for want of a trustee. One can always be appointed by the court.

The 1945 property preservation agreement between CJI, CSI, and the Acting Secretary of the Interior (one of the contracts that the panel relied on) referred to "deed[s] of Trust" from 1894. As the trial judge explained, these deeds purported to convey the interest of the original property trustees' descendants to CSI. While there wasn't an express statement in the 1894 deeds that the property held in trust was for the benefit of the Jewish congregation in Newport, several of the deeds did mention that the property was held "in trust." The panel claims that the deeds lack any significance for this case:

> At best, the deeds may collectively have had some rhetorical value for CSI in dealing with the tensions between it and the new congregation of CJI; as the district court noted, the deeds contained the first statements of what later became the lease condition that worship at Touro conform to Sephardic practice as observed by CSI. The upshot is that the record fails to show that the references to a trust obligation on CSI's part to the worshipers at Touro were anything more than terms of empty conveyances. They are, moreover, unsupported by evidence of the sort preferred in applying neutral principles meant to keep a court from entanglement.

- 4 -

While the deeds may not contain an express statement of the details of the trust, it is relevant evidence that a trust exists.

As CJI points out in their petition for rehearing, the panel's decision completely ignores a will considered and relied upon by the trial judge. In Jacob Rodrigues Rivera's will, dated 1787, he wrote:

> I have no exclusive Right, or Title, Of, in, or to the Jewish Public Synagogue, in Newport, on Account of the Deed thereof, being made to Myself, Moses Levy & Isaac Harte, which Isaac Harte, thereafter Conveyed his One third Part thereof to me, but that <u>the same was so done, meant and intended, in trust Only, to and for the sole Use, benefit and behoof of the Jewish Society, in Newport, to be for them reserved as a Place of Public Worship forever</u> . . . .

If anything, the 1932 legislation is consistent with the express acknowledgment in this will that a trust exists for the "benefit and behoof" of the Jewish Society in Newport. In 1787, this society was not formally known as CJI because, as the trial judge explained, religious organizations were not granted charters at that time, which was why three individuals were named owners of the property on the deed. But in 1894, CJI received a charter from the General Assembly, recognizing it as a corporation under Rhode Island laws.

I am also concerned about the precedent that the panel's decision sets for future property disputes between religious entities. In its statement, the panel is clear that there is no "categorical limitation on competent evidence" in the "litigation of religious property disputes," but after laying out the intricacies of adjudicating property disputes between religious entities and emphasizing the types of documents on which the courts should focus, the panel relies on the formal contracts to the exclusion of these other documents. The result is that the panel's decision implies that when contracts are available, they should be relied on to the exclusion of other relevant and potentially dispositive evidence such as wills and charters, even though the panel's opinion indicates that these documents can be just as significant as contracts. Future parties arguing over religious properties and courts adjudicating the next religious property dispute who look for precedential guidance about how to avoid unnecessary entanglement in religious doctrine are receiving conflicting messages on this point.

The panel has tried to carve a very narrow holding, emphasizing that its conclusions only apply to the lack of any obligation to CJI by CSI as owner of the subject property. The panel clarifies in its statement that "[t]he opinion does not address the possibility of a trust obligation to a non-CJI Newport 'Jewish society' as beneficiary." Here again, though, the panel's conclusions contradict findings of fact made by the trial judge -- e.g., that CJI is currently the only established Jewish congregation in Newport -- but without first concluding that the trial judge's finding is clearly erroneous. So if there is a real possibility that CSI owns the property but with trust obligations to some other entity, then, as a practical matter, to whom might CSI owe these obligations? Who would have standing to claim status as a bona fide beneficiary and not be precluded from litigating their claims? An individual Newport resident who worships at CJI but who is not a member of CJI? A congregation in a neighboring town to Newport who wants to use the sacred, historical site for religious or educational activity? I am concerned that any future

litigants who are tied to worship at the Touro Synagogue could struggle to survive a res judicata challenge based on the identity of parties prong of such a defense.

I am also concerned that my colleagues have completely omitted any discussion of Rhode Island's extensive case law pertaining to charitable trusts. A rehearing en banc would have provided us with the opportunity to explore how Rhode Island law, when applied to the mountain of secular evidence available here, would have affected my colleagues' conclusions about whether CSI is holding the property in trust for the benefit of CJI.

Finally, I also believe the panel's holding that CSI owns the Rimonim outright represents a deviation from Rhode Island's law about presumption of ownership arising by implication from continuous possession. The trial judge found that "[o]ne of the few undisputed facts in this litigation is that for over 100 years, the Rimonim have been in the possession of [CJI]." Without concluding that the trial judge clearly erred in his finding or addressing long-standing Rhode Island law that a presumption of ownership arises from continuous possession, the panel concludes that the Rimonim are owned outright by CSI because the 1903 lease agreement included the synagogue's "paraphernalia" and the Rimonim had been in use at the synagogue for a long time.

Accordingly, I conclude that this case is worthy of en banc review on both prongs of Fed. R. App. P. 35(a). The panel's deviation from our traditional standard of review for a trial judge's decision following a bench trial invokes Rule 35(a)(1). The implications of this opinion for future disputes over religious property in general, as well as the subject property of this dispute specifically, invokes Rule 35(a)(2). As a result of these concerns, I dissent from the denial of en banc review.

By the Court:
/s/ Margaret Carter, Clerk

cc:
Hon. John J. McConnell
Hanorah Tyer-Witek, Clerk, United States District Court for the District of Rhode Island
Steven Earle Snow
Jonathan Mark Wagner
Gary Naftalis
Daniel P. Schumeister
Tobias Jacoby
John F. Farraher Jr.
Louis Mark Solomon
Deming E. Sherman
Colin A. Underwood
Krystle Guillory Tadesse
Nancy Lauren Savitt
Adam J. Sholes
Chrisanne E. Wyrzykowski
Eric C. Rassbach
Rachel Busick
Diana Verm